SO ORDERED.

Dated: May 26, 2023

Daniel P. Collins, Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 Proceedings |
| WIN BIG DEVELOPMENT, LLC | Case No: 2:20-bk-07495-DPC |
| Debtor. | **UNDER ADVISEMENT ORDER RE MECHANIC'S LIEN** |
| | (Not for Publication – Electronic Docketing ONLY)[1] |

Before this Court is a dispute between two creditors claiming an interest in proceeds from the sale of property once owned by Win Big Development, LLC ("Debtor"). Logos Builders Southwest, LLC ("Logos") claims a pre-sale mechanics' lien on Debtor's lot 6 ("Lot 6"). Logos is vying for priority over liens held against Lot 6 by the Evelyn J. Howe Revocable Living Trust ("Evelyn Trust") and Larry L. Howe Revocable Living Trust ("Larry Trust") (collectively, "Howe Trusts"). After considering the parties' briefs, oral arguments, and case law concerning mechanic's liens in the State of Arizona, this Court now issues this Order finding Logos's mechanic's lien is valid, enforceable, and holds priority over the Howe Trusts' secured interests in Lot 6.

---

[1] This decision sets forth the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. ("Rule") 7052.

## I. BACKGROUND

On June 4, 2020, Debtor filed its voluntary chapter 11 bankruptcy petition ("Petition Date").[2] During the course of these chapter 11 proceedings, Debtor sold its primary assets, namely real property located at 1205 and 1215 E. Devonshire Avenue, Phoenix, Arizona 85014 (collectively, the "Property").[3] The Property was comprised of 12 residential lots, including Lot 6 which is the subject of the dispute between Logos and the Howe Trusts. The aggregate sales price for the Property totaled $1.9 million.[4] After closing costs, Debtor's attorney's fees, UST fees, and a $50,000 carve out for unsecured creditors, $1,770,645.64 remained ("Net Sale Proceeds").

The parties do not dispute that the Net Sale Proceeds are to be allocated with an equal apportionment to each of the 12 lots. Equal apportionment produces a total of $147,553.80 per lot. The Court asked each creditor claiming a secured interest in the Net Sale Proceeds to file a brief setting forth the amount of their claim, the calculations to derive the amount of their claim, the identity of the lot or lots securing their claim, and a statement alleging the basis for their secured claim and the priority of such claim.[5]

The Howe Trusts filed briefs regarding the priority of their liens and allocation of the Net Sale Proceeds.[6] In their Responses to Logos ("Howe Trust Responses")[7] and Replies ("Howe Trust Replies"),[8] the Howe Trusts challenged the validity of Logos's mechanic's lien. Logos filed its Statement of Claim and Priority ("Logos Statement"),[9] Response ("Logos Response")[10] and Reply ("Logos Reply").[11]

---

[2] DE 1. "DE" references a docket entry in the bankruptcy case 2:20-bk-7495-DPC.
[3] DE 208. The purchase contract was later assigned on January 20, 2023 to Hanamaki Investments, LLC. *See* DE 214.
[4] DE 208.
[5] DE 223.
[6] DE 232; DE 236.
[7] DE 245; DE 250.
[8] DE 253; DE 254.
[9] DE 234.
[10] DE 249.
[11] DE 257.

On March 28, 2023, the Court held a hearing on these issues. The Court then took this matter under advisement. On April 4, 2023, Logos filed a Closing Brief on Lien Validity ("Closing Brief").[12]

For the purposes of this Order, lots 1 through 5 and 7 through 12 are not at issue. The only parties claiming an interest in Lot 6 are Logos, the Howe Trusts, and DO Income Fund, LLC. It is undisputed that DO Income Fund, LLC has priority over the Howe Trusts and Logos. It is only the $12,632.49 Logos claims on Lot 6 that remains in dispute and that dispute is only between Logos and the Howe Trusts.[13]

## II. THE BRIEFS

### A. Logos's Statement

Logos claims perfected mechanic's liens on lots 1 through 12 in the aggregate amount of $151,589.87 ($12,632.49 per lot).[14] Logos does not dispute that its liens are inferior to America's Specialty Finance Company, LLC ("ASF") as to lots 1 through 4 and, therefore, may recover only from Net Sale Proceeds attributable to lots 5 through 12.[15] ASF does not dispute Logos's mechanic's liens on lots 5 through 12, nor does it dispute Logos's priority over ASF as to lots 5 and 8 through 12.

In accordance with A.R.S. § 33-992.01, Logos sent four preliminary twenty-day notices.[16] All of these notices were sent to Debtor at its 14632 N. Frank Lloyd Wright Boulevard address in Scottsdale, Arizona.[17] The December 21, 2018 notice ("First Notice") was sent to Debtor and Craftsman and Associates, LLC ("Management Company").[18] The December 31, 2018 notice ("Second Notice") and the January 14,

---

[12] DE 265.
[13] The Debtor filed DE 242 seeking this Court's order to disburse payment of this amount to Logos, ahead of any payment to the Howe Trusts.
[14] DE 234, page 2. While Logos may be entitled to attorney fees, Logos indicated it will not seek attorney fees. DE 265, page 14.
[15] DE 234, page 2.
[16] DE 236, Exhibit F. The four preliminary twenty-day notices are dated December 21, 2018; December 31, 2018; January 14, 2019; and June 20, 2019. DE 236, Exhibit F.
[17] DE 236, Exhibit F. There is no dispute that this was an accurate address for the Debtor.
[18] DE 236, Exhibit F.

2019 notice ("Third Notice") were sent by Logos to the Debtor, the Don and Sandi Revocable Trust, and the Management Company.[19] Logos's June 20, 2019 notice ("Fourth Notice") was sent to the Debtor, the Management Company, and Real Estate Finance Corporation, which was listed as the lender.[20] On July 2, 2019, Logos recorded its notice and claim of lien ("Lien Claim") in accordance with A.R.S. § 33-993.[21] Logos claims the first day earth was moved at the Property was August 1, 2018.[22] Logos, therefore, claims a mechanic's lien priority date of August 1, 2018.[23]

Logos's four preliminary twenty-day notices all identify the jobsite as: "SUNSET VILLAS 4143 12TH ST AKA 1205 E DEVENSHIRE [*sic*] AVE PHOENIX, AZ 85014."[24] Logos's Lien Claim lists the same address but also includes the full and correct legal description of all 12 lots within the jobsite.[25]

### B. Howe Trusts' Claims and Responses

The Howe Trusts recorded their respective deeds of trust against Lot 6 on March 12, 2019.[26] The Howe Trusts argue that Logos's claimed mechanic's lien is invalid as to Lot 6 because Logos's preliminary twenty-day notices use the jobsite address of 1205 E. Devenshire [*sic*].[27] The Howe Trusts argue that Debtor owned two separate properties within the jobsite, namely 1205 E. Devonshire and 1215 E. Devonshire.[28] The Howe Trusts contend that 1205 E. Devonshire relates only to lots 1 through 4 and 1215 E. Devonshire relates only to lots 5 through 12.[29] According to the Howe Trusts, this

---

[19] DE 236, Exhibit F.
[20] DE 236, Exhibit F.
[21] DE 234.
[22] DE 234, page 2.
[23] DE 234, page 2.
[24] DE 236, Exhibit F.
[25] DE 236, Exhibit F.
[26] DE 232; DE 236.
[27] DE 236, page 3.
[28] DE 236, page 3. It does not appear that the Howe Trusts are troubled by the misspelling of Devonshire. Neither is the Court.
[29] DE 236, page 4.

property description is fatally flawed under Arizona's mechanic's lien statutes, thereby invalidating Logos's claimed mechanic's lien on Lot 6.[30]

The Howe Trusts make two additional arguments supporting their contention that Logos's claimed mechanic's lien on Lot 6 is invalid. First, Logos's preliminary twenty-day notices state that the property is located at 4143 N. 12th Street, which is a neighboring property owned by the Don and Sandi Revocable Trust.[31] Second, the Howe Trusts argue that, because Logos obtained a partial state court pre-Petition Date judgment against Debtor on its breach of contract claim, Logos waived its right to assert its mechanic's lien on Lot 6.[32] The Howe Trusts note Logos's judgment lien was recorded after the recording of the Howe Trusts' deeds of trust so Logos's judgment lien is inferior to the Howe Trusts' liens.[33]

### C. Logos's Responses and Closing Brief

Logos responds that the Debtor never objected to any of Logos's preliminary notices as being inadequate pursuant to A.R.S. §§ 33-992.01(I) and (J).[34] So long as the preliminary twenty-day notices allowed for the owner, original contractor, and construction lender to have "meaningful communication[,]" then the purpose of A.R.S. § 33-992.01 has been met.[35] Furthermore, Logos states its preliminary twenty-day notices used the identical address which Debtor used in its contract with Logos to identify the jobsite.[36] Logos also notes its preliminary twenty-day notices used the same address utilized by the City of Phoenix in its permitting of the jobsite.[37] Finally, Logos argues

---

[30] DE 236, page 4.
[31] DE 245, page 3-4.
[32] DE 250, page 1.
[33] DE 250, page 1.
[34] DE 257, page 8. A.R.S. § 33-992.01(J) states that an owner or interested party who fails to furnish information that corrects an inaccuracy in the preliminary twenty-day notice loses the ability to later raise that inaccuracy as a defense. *Id.*
[35] DE 265, page 3; see also *Delmastro & Eells v. Taco Bell Corp.*, 228 Ariz. 134, 138 (Ct. App. 2011).
[36] DE 257, page 8.
[37] DE 257, page 8.

that A.R.S. § 33-1008 tells us what must be done to effectively waive and release a lien and that Logos never waived its mechanic's lien under the requirements of that statute.[38]

### III. JURISDICTION

Pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (B), and (K), this Court has jurisdiction over this case and the issues described in this Order.

### IV. ISSUE PRESENTED

Whether Logos holds a valid Lien Claim supported by preliminary twenty-day notices which substantially comply with the requirements and purpose of A.R.S. § 33-992.01.

### V. ARIZONA LAW REGARDING MECHANIC'S LIENS

Mechanic's liens are creatures of statute and require strict compliance with the statutes that govern them.[39] These statutory provisions, however, are "interpret[ed] liberally so as to effectuate their purposes."[40] "In effect, this means a lien claimant must demonstrate substantial compliance with each statutory requirement consistent with its purpose."[41] The Arizona Supreme Court has stated that mechanic's liens and materialmen's lien statutes are to be "liberally construed in favor of materialmen."[42]

Pursuant to A.R.S. § 33-992.01, mechanic's lien claimants must provide a preliminary twenty-day notice to the owner, original contractor, and construction lender prior to recording a valid mechanic's lien.[43] In 2011, the bankruptcy court for the District of Arizona stated:

> It is undoubtedly true that the primary purpose of the [twenty]-day notice requirement is to protect owners, primarily by advising them of what might otherwise be regarded as secret lien rights.[44]

---

[38] DE 257, page 2. A.R.S. § 33-1008 requires a lien claimant to execute and deliver a waiver and release in substantial compliance with A.R.S. § 33-1008 to be deemed an effective waiver. A.R.S. § 33-1008.
[39] *Delmastro*, 228 Ariz. at 139.
[40] *Id.* at 138.
[41] *Id.*
[42] *Columbia Grp. v. Jackson*, 151 Ariz. 76, 79 (1986).
[43] A.R.S. § 33-992.01.
[44] *In re Mortgages Ltd.*, 444 B.R. 585, 595 (Bankr. D. Ariz. 2011).

In other words, Arizona's preliminary twenty-day notice requirement is designed to provide owners an opportunity to clear up mechanic's claims before they become liens against the owner's property.[45] Notably, unlike liens recorded with an Arizona County Recorder's Office, preliminary twenty-day notices are only sent to the property owner, the general contractor, and the lender.[46] Third parties are not entitled to receive the preliminary twenty-day notices. Only upon recordation of a mechanic's lien—after the construction project is complete—is the preliminary twenty-day notice visible to third parties as an attachment to the recorded mechanic's lien.[47]

As noted above, to comply with Arizona's mechanic's lien statutes, a lien claimant's preliminary twenty-day notice must include, among other things, a "legal description, subdivision plat, street address, location with respect to commonly known roads or other landmarks in the area **or** any other description of the jobsite sufficient for identification" (emphasis added).[48]

This "sufficient for identification" language was interpreted by the Arizona Court of Appeals in the *Westinghouse* case. In *Westinghouse*, the court reviewed the language of former A.R.S. § 33-993.[49] That statute required a recorded mechanic's lien to include a jobsite description "sufficient for identification."[50] The *Westinghouse* court held that, for a recorded mechanic's lien's jobsite description to be "sufficient for identification," the court must determine "whether a stranger to the underlying transaction, based upon the description contained in the notice and claim of lien and their general knowledge of the area, could ascertain the property to which the lien attached."[51]

---

[45] *Id.*
[46] A.R.S. § 33-992.01(D).
[47] A.R.S. § 33-993(A)(6).
[48] A.R.S. § 33-992.01(C)(4).
[49] *Westinghouse Elec. Supply Co. v. Western Seed Prod. Corp.*, 119 Ariz. 377 (Ct. App. 1978).
[50] *Id.* at 379.
[51] *Id.*

Although *Westinghouse* pertained to a recorded mechanic's lien, this "stranger-to-the-transaction" test was subsequently adopted by *Delmastro* in a case concerning a preliminary twenty-day notice.[52] In *Delmastro*, the court was asked to determine whether a mechanic's lien claimant's preliminary twenty-day notices were "sufficient for identification."[53] There, a mechanic's lien claimant had given preliminary twenty-day notices to the owner of a commercial complex for the claimant's construction of a Tutor Time Child Care on Block 1.[54] The owner of the commercial complex later sold Block 3 to Taco Bell.[55] The mechanic's lien claimant filed a notice and claim of lien that included Block 3.[56] Taco Bell objected to the asserted mechanic's lien.[57] The court held in favor of Taco Bell because the mechanic's preliminary twenty-day notice relating to Block 1 was insufficient to identify Block 3.[58]

The parties and the court in *Delmastro* agreed that the "stranger-to-the-transaction" test should apply to preliminary twenty-day notices because the same operative "sufficient for identification" language applied.[59] Accordingly, *Delmastro* extended *Westinghouse's* "stranger-to-the-transaction" test to determine whether a preliminary twenty-day notice was valid under A.R.S. § 33-992.01.[60] *Delmastro* held that for a jobsite description in a preliminary twenty-day notice to be "sufficient for identification," "it must inform a stranger to the transaction about the specific property to which any future lien will attach."[61]

---

[52] *Delmastro,* 228 Ariz. 134 (Ct. App. 2011).
[53] *Id.* at 137.
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.* at 140.
[59] *Id.* at 139 ("Nevertheless, the operative language of these provisions is essentially the same, and logic compels extending the *Westinghouse* standard to the descriptions within a preliminary lien notice.").
[60] *Id.* at 139 n.4 ("*Westinghouse* construed language in the former version of § 33-993 requiring a notice of lien to include '[a] description of the lands and improvements to be charged with a lien, sufficient for identification.' 1966 Ariz. Sess. Laws, ch. 63, § 20.").
[61] *Id.* at 140.

## VI. ANALYSIS

### A. Logos's Preliminary Twenty-Day Notices

The sole issue this Court is tasked with deciding is whether Logos's preliminary twenty-day notices were "sufficient for identification" of Lot 6 within the meaning of A.R.S. § 33-992.01. If Logos's notices were sufficient, then Logos's recorded Lien Claim on Lot 6 is superior to the later recorded Howe Trusts' liens. If Logos's preliminary twenty-day notices were insufficient under A.R.S. § 33-992.01, the prerequisite to perfection of Logos's recorded Lien Claim is defective and, therefore, Logos's Lien Claim is inferior to the Howe Trusts secured claims on Lot 6. This Court concludes Logos's Lien Claim on Lot 6 is valid.

The Arizona Supreme Court has stated that the mechanic's lien and materialmen's lien statutory schemes are to be liberally construed in favor of materialmen.[62] Significantly, the purpose of requiring a preliminary twenty-day notice under A.R.S. § 33-992.01 is to give owners knowledge of potential lien claims against the owner's property—not to eliminate mechanic's liens or materialmen's liens.[63] Here, the preliminary twenty-day notices are in substantial compliance with the purpose of the statute because they gave the owner (Debtor) knowledge of potential lien claims against the Property. The First Notice was sent to the Debtor and the Management Company.[64] The Second and Third Notice were sent to Debtor and the Management Company, but also included the Don and Sandi Revocable Trust.[65] The Fourth Notice was sent to the Debtor, the Management Company, and Real Estate Finance Corporation, who was listed as the lender and/or bonding company. The Debtor was properly notified of all four of Logos's preliminary twenty-day notices. The notices went to the address Debtor specified

---

[62] *See e.g., Columbia Grp.*, 151 Ariz. at 79.
[63] *See e.g., Id.*
[64] DE 236, Exhibit F.
[65] DE 236, Exhibit F.

in its contract with Logos. The address listed for the jobsite was also the same address relied upon by City of Phoenix when it issued permits to the Debtor.[66] The parties have supplied no evidence that Debtor ever objected to any of Logos's preliminary twenty-day notices as being inaccurate or not in compliance with A.R.S. § 33.992.01(I) and (J). Moreover, the Debtor never objected to Logos's claimed mechanic's lien either before or during these bankruptcy proceedings. In fact, the proposed distribution filed with this Court by the Debtor called for payment to Logos in the amount of $101,059.84 on lots 5 through 12. This amount included a payment of $12,632.48 on Lot 6.[67]

Next, this Court looks to Arizona case law to determine the proper test to apply to the preliminary twenty-day notices required by A.R.S. § 33-992.01. The *Delmastro* court held that the stranger-to-the-transaction test applies to preliminary twenty-day notices. This Court is puzzled as to why the "stranger-to-the-transaction" test would or should apply to a preliminary twenty-day notice. The preliminary twenty-day notices are not sent to strangers. They are not recorded in any public registry when they are first sent out. These notices are only required to be sent to the owner, lender, and general contractor. Nevertheless, even applying the "stranger-to-the-transaction" test, Logos's preliminary twenty-day notices were "sufficient for identification" of the jobsite at issue. First, the Property is a single, residential jobsite that consists of 12 lots. The preliminary twenty-day notices include a street address (1205 E. Devonshire), commonly known roads (12th Street and Devenshire [*sic*]), and the name of the development (Sunset Villas). All of these jobsite descriptions are listed as ways to describe a jobsite under A.R.S. § 33-99.01(C)(4). Further, the facts here are distinguishable from *Delmastro*. In *Delmastro*, the property at issue was a subdivided commercial complex.

---

[66] DE 236, Exhibit F.
[67] DE 242, pages 4-5.

Although the Howe Trusts contend that the preliminary twenty-day notices do not include the 1215 E. Devonshire address (a more specific address for Lot 6), an aerial view of the Property and a plat map[68] clearly reflect the Property as one jobsite with 12 conjoined lots. The same "Sunset Villas" name used in the preliminary twenty-day notices, was used in the plat map recorded on April 28, 2017 at Instrument Number 2017-0307298 with the Maricopa County Recorder's Office and in the dust permits issued by the City of Phoenix.[69] At all relevant times, the Debtor only had one jobsite.[70] Separating lots 1 through 4 from lots 5 through 12 would be inappropriately arbitrary, especially given the uniformity in construction on each of these 12 lots. The Court finds a reasonable "stranger to the transaction" would conclude the entirety of these 12 lots constitute one project, one jobsite.

The Court finds that, upon the strength of Logos's four preliminary twenty-day notices, the owner, the lender, and "stranger to the transaction" could or should expect an eventual lien recording against the 12 lots if Logos was not timely paid for its work. This Court finds Logos's four preliminary twenty-day notices substantially comply with the intent and purpose of A.R.S. § 33-991.01. Since Logos's preliminary twenty-day notices satisfied the requirements of A.R.S. § 33-992.01, Logos's Lien Claim is valid.

**B. No Waiver of Logos's Mechanic's Lien**

The Howe Trusts argue that Logos waived its mechanic's lien when it pursued and obtained a state court pre-Petition Date judgment for breach of contract against Debtor and then later recorded that judgment with the Maricopa County Recorder's Office. In response, Logos points out that, under A.R.S. § 33-1008(B):

> No oral or written statement purporting to waive, release, or otherwise adversely affect a claim is enforceable or creates any estoppel or impairment of a claim unless it is pursuant to a waiver and release

---

[68] DE 265-1, Exhibit A.
[69] DE 265, page 13.
[70] DE 265, page 10.

prescribed by this section or the claimant had actually received payment in full for the claim.[71]

A.R.S. § 33-1008 provides a sample form of a waiver and release that must be executed in substantially the same form to be a valid waiver and release of a mechanic's lien.[72] There is no evidence before this Court that Logos executed such a waiver and release. The Howe Trusts do not supply any legal citations suggesting that pursuing and obtaining a judgment lien against the Debtor constitutes an exception to the mechanic's lien waiver procedure required by A.R.S. § 33-1008.

This Court finds Logos did not waive its mechanic's lien by pursuing and obtaining a judgment against Debtor and then recording that judgment with the Maricopa County Recorder's Office on March 11, 2020.

**C. The Don and Sandi Revocable Trust**

The Howe Trusts argue that Logos's preliminary twenty-day notices incorrectly list the address of 4143 N. 12th Street, a property apparently owned by the Don and Sandi Revocable Trust. The 4143 N. 12th Street address appears to be a parcel of land immediately adjacent to lots 1 through 12 of the Sunset Villas jobsite. Perhaps the Second and Third Notice were copied to the Don and Sandi Revocable Trust as a courtesy to the Debtor's neighbor. This notice is not to Debtor's neighbor required by A.R.S. § 33-991.01. This Court has already explained that, based on Logos's legally sufficient preliminary twenty-day notices, the owner, lender, and a "stranger to the transaction" would or should expect future lien recordings by Logos against all 12 lots. The fact the Don and Sandi Revocable Trust and its 4143 N. 12th Street address were included in the Second Notice and Third Notice does not defeat or invalidate Logos's preliminary twenty-day notice or Logos's Lien Claim.

---

[71] A.R.S. § 33-1008(B).
[72] A.R.S. § 33-1008(D).

## VII. CONCLUSION

Logos's preliminary twenty-day notices substantially complied with A.R.S. § 33-992.01 and were legally and factually sufficient to satisfy Arizona law. Logos held a valid pre-petition mechanic's lien on Debtor's lots 1 through 12. As to Lot 6, Logos's valid mechanic's lien is superior to the Howe Trusts' deeds of trust because Logos's valid Lot 6 mechanic's lien pre-dates the Howe Trusts' liens by over 8 months.

The Debtor or its agents are directed to promptly distribute to Logos $12,632.49 on account of its valid, perfected mechanic's lien against Lot 6. The Debtor or its agents are directed to distribute to the Howe Trusts equal portions of the remainder of the sale proceeds allocated to Lot 6, *i.e.*, $31,204.37 to the Larry Trust and $31,204.37 to the Evelyn Trust.

**ORDERED**
**DATED AND SIGNED ABOVE.**

**To be Noticed through the BNC to:**
Interested Parties